633 S.E.2d 38

**Helen L. PORTER and Eston Porter, Plaintiffs**

v.

**GRANT COUNTY BOARD OF EDUCATION Defendant.**

No. 32866.

Supreme Court of Appeals of West Virginia.

Submitted: April 11, 2006.

Decided: June 16, 2006.

**284**

Duke A. McDaniel, Esq., Petersburg, for Plaintiffs.

Tamara J. DeFazio, Esq., J. Robert Russell, Esq., Pullin Fowler & Flanagan, PLLC, Morgantown, for Defendant.

MAYNARD, Justice.

In this case, we address the first of two certified questions from the Circuit Court of Grant County.[1]

Does W.Va.Code § 29–12A–5(a)(6) (1986) immunize a county board of education from liability for an injury incurred when the plaintiff slipped and fell on snow

1. Our answer to the first certified question makes it unnecessary to address the second question.

2. We have reformulated the question certified by the circuit court. According to W.Va.Code § 51–1A–4 (1996), "[t]he supreme court of appeals of West Virginia may reformulate a question certified to it." Also, this Court has recognized its power to reformulate a certified question when it is not framed in a way that allows us to fully address the law involved in the question. *See Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993).

The circuit court framed the question as follows:

and ice on school grounds while en route to a school-sponsored athletic contest where the wrongful act alleged against the school board was its decision to hold the previously scheduled athletic contest on the same date that it cancelled classes countywide due to inclement weather?[2]

For the reasons that follow, we answer the certified question in the affirmative.

## I.

## FACTS

The following is a thumbnail sketch of the relevant facts. On January 21, 2000, the Superintendent of the Grant County Board of Education, defendant below, cancelled classes in the entire county due to the effects of a major snow storm. One of the schools whose classes were cancelled was Petersburg High School. Despite the fact that the school was closed for classes that day, the principal and athletic director decided not to cancel a previously scheduled school-sanctioned basketball game in the high school gymnasium. As Helen and Eston Porter, the plaintiffs below, were walking to the gymnasium to attend the basketball game, Mrs. Porter slipped and fell on a sidewalk located on school property and was injured.

The Porters[3] thereafter sued the Grant County Board of Education. Their amended complaint alleges that the school board, through its superintendent, agents, and employees, was negligent in opening the school gymnasium for an athletic event when the entire county school system was closed due to the snow storm. Specifically, the com-

Does West Virginia Code § 29–12A–5(a)(6) immunize the Grant County Board of Education from liability in a civil action in which it is alleged that, on a date on which the Grant County Board of Education cancelled school due to inclement weather, but went forward with a high school basketball game held during evening hours at the Petersburg High School Gymnasium, an individual attending the game slipped and fell on snow and ice located on the school's grounds?

The circuit court answered the question in the negative.

3. In addition to Mrs. Porter's primary claim, Mr. Porter alleged loss of consortium.

plaint alleges that the superintendent was negligent for not directing the principal and athletic director of Petersburg High School to close the school's campus for all school-sanctioned events. The complaint further avers that the principal and athletic director were negligent for allowing the school to be open in violation of the normal school board policy and custom of cancelling all school-related activities when classes are closed due to the weather. The complaint characterizes these actions or failures as "willful, wanton, and negligent conduct" which "exposed your Plaintiff and her husband, as well as the general public, to a hazardous condition" proximately causing Mrs. Porter's injury.

In response, the defendant school board claimed immunity from liability for Mrs. Porter's injury pursuant to, *inter alia,* the Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act" or "the Act"), W.Va.Code §§ 29–12A–1, *et seq.*

## II.

## STANDARD OF REVIEW

■ It is well settled that our standard of reviewing a question certified and answered by a circuit court is *de novo. See* Syllabus Point 1 of *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996) (holding that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo* ").

## III.

## DISCUSSION

The specific issue before us is whether W.Va.Code § 29–12A–5(a)(6) grants immunity to the school board under the facts of this case. As noted above, W.Va.Code § 29–12A–5(a)(6) is part of the Tort Claims Act. The Legislature's stated purpose in enacting the

Tort Claims Act was "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." W.Va.Code § 29–12A–1 (1986).[4] According to W.Va.Code § 29–12A–3(c) (1986), " '[p]olitical subdivision' means any … county board of education."

The Tort Claims Act provides at W.Va. Code § 29–12A–4(b)(1) (1986), that,

Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or propriety function[.]

Subsection (c) lists five instances in which political subdivisions are liable for damages arising from an act or omission. The statute at issue, W.Va.Code § 29–12A–5, lists 17 instances in which a political subdivision is immune from liability for a loss or claim. Specifically at issue here is W.Va.Code § 29–12A–5(a)(6), which states,

(a) A political subdivision is immune from liability if a loss or claim results from:

(6) Snow or ice conditions or temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of a political subdivision[.]

The school board below moved to dismiss the Porters' complaint on the basis of the immunity provided in W.Va.Code § 29–12A–5(a)(6). This motion was denied by the circuit court which then certified the question of immunity to this Court. The circuit court found that W.Va.Code § 29–12A–5(a)(6) does

**4.** According to W.Va.Code § 29–12A–2 (1986),

The Legislature finds and declares that the political subdivisions of this state are unable to procure adequate liability insurance coverage at a reasonable cost due to: The high cost in defending such claims, the risk of liability beyond the affordable coverage, and the inability of political subdivisions to raise sufficient revenues for the procurement of such coverage without reducing the quantity and quality of

traditional governmental services. Therefore, it is necessary to establish certain immunities and limitations with regard to the liability of political subdivisions and their employees, to regulate the insurance industry providing liability insurance to them, and thereby permit such political subdivisions to provide necessary and needed governmental services to its citizens within the limits of their available revenues.

not provide immunity to the school board under the instant facts. The court reasoned:

> The language of the statute requiring an affirmative act on behalf of the Board of Education in creating the snow or ice conditions before liability can be established is bordering on the ridiculous.... The legislature could not have meant that the Board of Education would have had to have made it snow, caused an ice storm, or otherwise "affirmatively" placed ice or snow on the sidewalk before it could be held liable.

The school board now argues that the circuit court erred in answering the certified question. According to the school board, the statutory language at issue is plain and does not lead to an absurd result. Accordingly, the school board asks this Court to apply W.Va.Code § 29–12A–5(a)(6) as written and hold that it is immune from liability under the facts of this case. The Porters, in contrast, urge this Court to answer the certified question as the circuit court did and conclude that the school board does not enjoy immunity under the instant facts.

■■■ When we are called upon to consider the meaning of a statute, we begin with the principle that "[a] statute is to be applied as written, not construed, where the intention thereof is made clear by the language used when considered in its proper context and as it relates to the subject matter dealt with." Syllabus Point 1, *Appalachian Electric Power Co. v. Koontz*, 138 W.Va. 84, 76 S.E.2d 863 (1953). Also, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). In its certification order, the circuit court did not expressly find that the statute was ambiguous. Rather, the circuit court ruled that the statute's exception to immunity renders a literal construction of the statute absurd.[5]

This Court finds that the language in W.Va.Code § 29–12A–5(a)(6) is clear and without ambiguity. We also find that construction of the provision as written does not produce an absurd result. Therefore, the provision should be applied as written. The first part of subsection (a)(6) plainly indicates that a political subdivision is immune from liability if a loss or claim results from snow or ice conditions on any public way. The parties do not appear to dispute this fact. The provision then proceeds to state an exception to immunity. Specifically, it provides that if the political subdivision affirmatively caused the snow or ice condition by a negligent act, the political subdivision is not immune from liability. This exception to immunity is the crux of the parties' disagreement.

It is obvious to this Court that the language of W.Va.Code § 29–12A–5(a)(6) means that a political subdivision is immune from liability for injury caused by snow or ice placed on a sidewalk by the weather. Thus, if the weather causes snow or ice to accumulate on a sidewalk and the political subdivision fails to remove it, the political subdivision is immune from liability for an injury caused by the snow or ice. On the other hand, where the snow or ice is placed on the public way by an act of the political subdivision, and the snow or ice causes an injury, the political subdivision is not immune from liability. There are several possible ways in which a political subdivision could place snow or ice on a sidewalk. For example, an employee of the political subdivision could remove snow or ice from the roadway by throwing it onto the sidewalk. Also an employee of a political subdivision could permit a broken pipe or hose to leak water onto a sidewalk where the water subsequently freezes.

■■■ Accordingly, we now hold that W.Va.Code § 29–12A–5(a)(6) (1986) clearly provides political subdivisions with immunity from liability for losses or claims resulting from snow or ice placed on public ways or

---

5. This Court has held that,

It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

other public places by the weather. However, political subdivisions are not immune from liability for losses or claims occurring from an affirmative negligent act of the political subdivision resulting in snow or ice on public ways or other public places.

The Porters also appear to argue that other provisions of the Tort Claims Act either override the immunity provided by W.Va.Code § 29–12A–5(a)(6) or make W.Va. Code § 29–12A–5(a)(6) ambiguous. Specifically, the Porters cite W.Va.Code § 29–12A–4(c)(2) which provides that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." They also point us to W.Va.Code § 29–12A–4(c)(3), which states that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep ... sidewalks ... or public grounds ... open, in repair, or free from nuisance." However, the provisions cited by the Porters are expressly made subject to W.Va.Code § 29–12A–5 by W.Va.Code § 29–12A–4(c). Thus, any liability set forth in W.Va.Code § 29–12A–4(c) is subject to the immunity for liability for losses or claims arising from snow or ice conditions in W.Va. Code § 29–12A–5(a)(6).

■ Further, our rules of statutory construction indicate that "[a] specific section of a statute controls over a general section of the statute." Syllabus Point 2, *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970). In the instant case, the section of the Tort Reform Act that deals specifically with immunity in cases involving the accumulation of snow and ice is W.Va.Code § 29–12A–5(a)(6). Therefore, it controls over more general sections of the Act.

Finally, the Porters contend that the decision of the principal and athletic director of Petersburg High School to hold the previously scheduled basketball game despite the fact that classes were cancelled that day is an affirmative act under the exception to immunity in W.Va.Code § 29–12A–5(a)(6). According to the Porters,

In the instant matter, the principal and athletic director disregarded the blanket school closure order to "affirmatively cause" the opening of the school for the game, and thus, in essence, represented to the players, parents, families, friends and fans of the basketball team that it was perfectly all right to come out for the game, despite the hazardous conditions which had necessitated closure of the schools that day. The Porters relied to their detriment on this negligent action of the school officials. By inviting folks out to the game, the school officials created the "condition" which proximately caused Mrs. Porter's slip and fall accident.

■ We reject this contention. The Porters misapprehend the plain language of the statutory provision at issue. According to this provision, the exception to immunity is applicable only where the political subdivision's negligent act affirmatively causes "[s]now or ice conditions or temporary or natural conditions." While the act by the school administrators to hold the basketball game despite that day's cancellation of classes arguably caused the Porters to venture out to the basketball game, it certainly did not cause the snow or ice conditions on which Mrs. Porter fell.[6]

■ Therefore, we now hold that W.Va. Code § 29–12A–5(a)(6) (1986) immunizes a county board of education from liability for an injury incurred when the plaintiff slipped

**6.** The Porters also rely to a great extent on this Court's holding that "[t]he general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail." Syllabus Point 2, *Marlin v. Bill Rich Const., Inc.,* 198 W.Va. 635, 482 S.E.2d 620 (1996). However, this general rule of construction is not applicable

in the instant case because we find that the Legislature clearly provided for immunity in W.Va.Code § 29–12A–5(a)(6).

In addition, the Porters rely for support on our decision in *Weese v. Muir,* 188 W.Va. 542, 425 S.E.2d 218 (1992). However, in *Weese* we limited our decision to the issue of proximate causation and did not consider the school board's claim of immunity under W.Va.Code § 29–12A–5(a)(6). Therefore, we do not find *Weese* instructive to the issue in this case.

and fell on snow and ice on school grounds while en route to a school-sponsored athletic contest where the wrongful act alleged against the school board was its decision to hold the previously scheduled athletic contest on the same date that it cancelled classes countywide due to inclement weather.

## IV.

### CONCLUSION

For the reasons discussed above, we answer the certified question as follows:

Does W.Va.Code § 29–12A–5(a)(6) (1986) immunize a county board of education from liability for an injury incurred when the plaintiff slipped and fell on snow and ice on school grounds while en route to a school-sponsored athletic contest where the wrongful act alleged against the school board was its decision to hold the previously scheduled athletic contest on the same date that it cancelled classes countywide due to inclement weather?

Answer: Yes.

Certified question answered.